IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY K. ALLEN,                                    07-CV-6113-BR

       Plaintiff,                         OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


MICHAEL A. KEENEY
Marion-Polk Legal Aid Service, Inc.
1655 State Street
Salem, Oregon 97301
(503) 581-2627 ext. 17

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158


1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Nancy K. Allen brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for continuing disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


<u>**ADMINISTRATIVE HISTORY**</u>

      Allen initially filed her applications for DIB and SSI on October 27, 1999.  Tr. 64-67.[1]  On March 30, 2001, the

---

     [1] Citations to the official transcript of record filed by the Commissioner on November 28, 2007, are referred to as "Tr."

2  -  OPINION AND ORDER

Commissioner found Allen was disabled as of October 18, 1999, because of a combination of impairments that an Administrative Law Judge (ALJ) found to be severe.  These impairments included hepatitis C with severe inflammation, necrosis, and fibrosis approaching cirrhosis with diffuse arthralgias (confirmed by biopsy and CT scan); status post Interferon/Ribaviran therapy with significant fatigue and malaise; osteoarthritis; hypothyroidism; history of hernia, status post repair; status post gastric stapling for obesity; and degenerative disc disease post two laminectomies.  Tr. 307.

On September 13, 2004, the Social Security Administration notified Allen that the Commissioner, after reviewing Allen's medical impairments, determined she was no longer disabled as of September 2004 and that her benefits would cease as of December 2004.  Tr. 1089-91.  Allen appealed the Commissioner's decision. On January 20, 2005, the Appeals Council upheld the Commissioner's decision to terminate Allen's benefits on the basis of her medical improvement.  Tr. 1085-87.  Allen requested a hearing.  Tr. 364.

On September 11, 2006, an ALJ held a hearing at which Allen was represented by an attorney.  Tr. 362-70, 1150.  Allen and her daughter, Angelia Baldwin, testified at the hearing.  Tr. 1150-1203.  On December 4, 2006, the ALJ issued an opinion in which he found Allen was not entitled to DIB and SSI based on a finding

3   -   OPINION AND ORDER

that Allen's medical impairments had improved to the extent that
she was capable of performing her past relevant work as a
telemarketer as of September 30, 2004.  Tr. 17-24.  That decision
became the final decision of the Commissioner on March 15, 2007,
when the Appeals Council denied Allen's request for review.
Tr. 10-12.


## BACKGROUND

Allen was 51 years old on the date her disability began and
58 years old at the time of the hearing before the ALJ.  Tr. 43,
65, 1150.  Allen is a high-school graduate.  Tr. 85.  She
attended two years of college and earned a certificate in Office
Assisting.  Tr. 85, 534.  She reported she has worked as a
telemarketer/data-entry clerk, babysitter, casino clerk, picture-
frame miller, nursing-home laundress, and a cannery worker.
Tr. 92, 144-51, 307, 1177-78.

Allen was diagnosed with hepatitis C in September 1999 on
the basis of a liver biopsy.  Tr. 745-46.  She underwent two
series of treatments with Interferon and Ribaviron, which
reversed the severe inflammation of her liver.  Tr. 324, 508,
590, 745-76.  Allen's hepatitis C remains in remission.  Tr. 19,
590, 974, 976.  She has been diagnosed with a mild cognitive
impairment, however, based in part on her complaints of decreased

memory and mental function since her hepatitis C treatments. Tr. 422-24, 533-38, 1101, 1103-04.

Allen also has been diagnosed with hypothyroidism and obesity. Tr. 417, 424, 1108, 1111. She underwent surgical gastric stapling and bypass in 1984 and 2006, which has recently resulted in significant weight loss. Tr. 1108, 1111. Allen has been diagnosed with obstructive sleep apnea, which has been effectively treated by CPAP titration. Tr. 1048. Allen also complains of significant fatigue when engaged in physical activity, which has been treated with some success by an inhaler. Tr. 1006-07. She also has been diagnosed with hypertension. Tr. 161, 645.

In addition, Allen has been diagnosed with left-shoulder adhesive capsulitis, which resulted from a fall in which she suffered a left radial neck fracture. Tr. 620, 682, 691. She had arthroscopic surgery in late 2005, which improved her range of motion and reduced her pain. Tr. 627-629, 635-646, 669-75, 1019. Allen also has been diagnosed with osteoarthritis and mild degenerative changes that cause her pain after surgery on her left knee. Tr. 424, 992-93, 996-97, 1000-05. Allen also suffers from persistent urinary incontinence. Tr. 619, 650, 690.

## **STANDARDS**

"[A]t all times, the burden is on the claimant to establish

[her] entitlement to disability insurance benefits." *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007)(quotation and citation omitted).  *See also Patti v. Schweiker,* 669 F.2d 582, 586 (9th Cir. 1982)(*rev'd* on other grounds).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  After a claimant is found to be disabled and entitled to benefits, the Commissioner must periodically review that claimant's continued entitlement to such benefits.  20 C.F.R. §§ 404.1594(a), 416.994(a).  The Commissioner must determine whether a recipient's impairments are medically improved, and, if so, whether that impacts the recipient's ability to work.  20 C.F.R. §§ 404.1594(b), 416.994(b).  "Medical improvement" is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings.

20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I).  To determine whether medical improvement has occurred, the Commissioner uses the most recent favorable medical decision as a "point of comparison."  20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii).

6   -   OPINION AND ORDER

"Our determination regarding whether your disability continues will be made on the basis of the weight of the evidence."  20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(1)(6).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

**DISABILITY ANALYSIS**

**I.  REGULATORY SEQUENTIAL EVALUATION FOR REVIEW AND TERMINATION OF DISABILITY BENEFITS.**

The Commissioner has developed a sequential inquiry to determine whether a claimant continues to be disabled within the meaning of the Act.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  *See also Dixon v. Barnhart,* 324 F.3d 997 (8th Cir. 2003).  The Social Security regulations require an eight-step analysis to determine whether a claimant's eligibility for DIB has ended and a seven-step evaluation to determine whether to terminate SSI benefits.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  The SSI inquiry is identical to the DIB analysis except for the omission of the first step in the DIB analysis in which the ALJ determines whether the claimant has engaged in substantial gainful activity since the beginning of the disability insurance period.  *Id.*

In Step One (DIB analysis only), the claimant does not continue to be disabled if the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).

In Step Two, the claimant continues to be disabled if the claimant's impairments meet or equal the severity of a listed impairment.  20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(I).

In Step Three, if the claimant's impairments no longer meet or equal the severity of a listed impairment, the Commissioner must determine whether the claimant has medically improved.  If

8   -  OPINION AND ORDER

the claimant has medically improved as shown by a decrease in
medical severity, the Commissioner must consider Step Four.  If
the claimant has not medically improved, the Commissioner must
consider Step Five.  20 C.F.R. §§ 404.1594(f)(3),
416.994(b)(5)(ii).

In Step Four, if the claimant has medically improved, the
Commissioner must determine whether the improvement is related to
the claimant's ability to work; "*i.e.*, whether [] there has been
an increase in the residual functional capacity."  If the
improvement is unrelated to the claimant's ability to work, the
Commissioner must consider Step Five.  If the medical improvement
is related to the claimant's ability to work, the Commissioner
must consider Step Six.  20 C.F.R. §§ 404.1594(f)(4),
416.994(b)(5)(iii).

In Step Five, if the claimant has not medically improved or
if any medical improvement is unrelated to the claimant's ability
to work, the Commissioner must consider whether any of the listed
exceptions to medical improvement apply.  20 C.F.R.
§§ 404.1594(d),(e),(f)(5); 416.994(b)(5)(iv).

In Step Six, if the claimant's medical improvement is
related to the claimant's ability to work, the Commissioner must
determine whether all of the claimant's current impairments in
combination are severe considering their combined impact on the
claimant's functional capacity.  If the claimant's combination of

impairments does not significantly limit his or her ability to do basic work activities, the claimant is no longer disabled.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).

In Step Seven, if the claimant's current impairment or combination of impairments is severe, the Commissioner must determine whether the claimant has the residual functional capacity (RFC) to perform any past relevant work.  If a claimant can perform past relevant work, the claimant is no longer disabled.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).

In Step Eight, if the claimant is unable to do past relevant work, the Commissioner must determine whether the claimant can perform other work.  If a claimant can perform other work, the claimant is no longer disabled.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).


## ALJ'S FINDINGS

In his opinion dated December 4, 2006, the ALJ found the most recent decision in which Allen was determined to be disabled and entitled to DIB and SSI benefits was the ALJ's opinion dated March 30, 2001.  Thus, the ALJ referred to that decision as the "comparison point decision."  Tr. 19, 306-10.  *See* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii).

At Step One, the ALJ found Allen had not engaged in substantial gainful activity during her period of disability from

10  -  OPINION AND ORDER

October 18, 1999, to September 30, 2004.  Tr. 19.

At Step Two, the ALJ found Allen suffered from the following medically determinable impairments:  hepatitis C (in remission), obesity, left-shoulder adhesive capsulitis, a mild cognitive impairment, mild obstructive sleep apnea, and urinary incontinence.  Tr. 19.  The ALJ concluded Allen's history of hepatitis C and obesity are severe impairments and her remaining impairments are nonsevere.  Tr. 19-21.

At Step Three, the ALJ found Allen does not have an impairment or combination of impairments that meets or equals any listed impairment.  Tr. 21.  The ALJ concluded Allen's impair-ments had medically improved as of September 30, 2004, due in part to the remission of Allen's hepatitis C and the conclusion of her Interferon and Ribaviron treatments.  Tr. 21-22.

At Step Four, the ALJ found Allen's medical improvement led to an increased RFC.  Tr. 22.  The ALJ concluded as of September 30, 2004, Allen could lift less than ten pounds frequently and up to ten pounds occasionally, could stand and/or walk for up to two hours of an eight-hour workday, and could sit without restriction.  Tr. 22.  The ALJ also concluded Allen is limited to rarely assuming postures that require flexion and extension of her back and left hip, and she can never reach above shoulder level.  Tr. 22.

At Step Seven, the ALJ determined Allen could perform her

11  -  OPINION AND ORDER

past sedentary work as a telemarketer.  Tr. 24.  Thus, the ALJ
concluded Allen is no longer disabled and, therefore, is no
longer entitled to benefits.  Tr. 24.


## **DISCUSSION**

Allen contends the ALJ erred when he (1) improperly rejected
Allen's subjective complaints of fatigue, memory loss, and pain;
(2) improperly rejected the lay testimony of Allen's daughters,
Angelia Baldwin and RaNee Osborne; (3) failed to develop the
record fully and fairly; (4) improperly applied the "medical-
improvement" standard; (5) improperly assessed the combined
impact of Allen's impairments when determining her RFC; and (6)
erroneously concluded Allen could perform her past work as a
telemarketer.

## I.  Lay Testimony.

### A.  Nancy K. Allen.

Allen contends the ALJ erred when he found that even though
Allen's medically determinable impairments "could have reasonably
been expected to produce the alleged symptoms, . . . the
claimant's statements concerning the intensity, persistence and
limiting effects of these symptoms are not entirely credible."
Tr. 23.  Allen testified at the hearing before the ALJ that she
suffers from fatigue and must take naps during the day at least
three or four times a week.  Tr. 1162-63.  Allen also testified

she has severe pain in her left knee, which has not improved
since she had arthroscopic surgery.  Tr. 1164-65.  Allen
testified she will eventually have to have her knee replaced.
Tr. 1165.  She also testified that urinary incontinence forces
her to take 20 trips to the lavatory per day.  Tr. 1175.

Allen attested she has struggled with memory loss since
receiving her hepatitis C treatments.  Tr. 1169-72.  She stated
she often forgets to take her medications, has restricted her
cooking because she forgets to turn off the stove, and
occasionally forgets to pay her bills.  Tr. 1169-73.  Because she
has difficulty with these daily activities, Allen testified she
relies on family members to help her cook, to perform household
chores, and for transportation.  Tr. 1168-72.

The test for rejecting a claimant's subjective symptom
testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.
1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The *Cotton* test establishes two basic requirements for a
claimant to present credible symptom testimony:  She must produce
objective medical evidence of an impairment or impairments, and
she must show the impairment or combination of impairments could
reasonably be expected to produce some degree of symptom.
*Cotton*, 799 F.2d at 1407.  The claimant, however, need not
produce objective medical evidence of the actual symptoms or
their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if the ALJ provides clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. To determine whether the claimant's subjective symptom testimony is credible, the ALJ may rely on, *inter alia*, "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." *Smolen*, 80 F.3d at 1284.

The ALJ determined Allen's obesity and hepatitis C, which is in remission, are severe impairments. Tr. 19-20. As noted, the ALJ concluded Allen's medically determinable impairments "could have reasonably been expected to produce the alleged symptoms." Tr. 23. Accordingly, the Court finds Allen has satisfied the first two prongs of the *Cotton* test by providing evidence of impairments that could reasonably cause her some degree of pain, fatigue, and memory loss. 799 F.2d at 1407. Because the ALJ did not determine Allen is malingering, the ALJ must provide clear and convincing reasons for rejecting Allen's subjective symptom testimony. *Lester*, 81 F.3d at 834.

The ALJ found Allen's alleged symptoms are disproportionate relative to the medical evidence in the record.  Tr. 23.  For example, the ALJ found the conclusions of Douglas A. Smyth, Ph.D., an examining psychologist, are inconsistent with Allen's alleged cognitive impairments.  Tr. 23.  The ALJ notes Dr. Smyth reported that Allen's cognition was grossly intact, her short- and long-term memory appeared to be intact, her attention span was normal, and she understood and could follow short directions.  Tr. 23, 537.  Despite these findings, Dr. Smyth made a "rule-out" diagnosis of cognitive disorder NOS and indicated further neuropsychological testing was necessary.  Tr. 538.  Dr. Smyth, however, concluded Allen "did not appear to be exaggerating symptoms.  Information provided regarding activities of daily living appeared to be consistent with observed behavior.  The results are considered to be a valid reflection of her current level of functioning."  Tr. 538.  Dr. Smyth noted Allen's reported symptoms of memory difficulties, inability to concentrate, and confusion are consistent with cognitive disorder, but he found further testing was necessary to make a determinative diagnosis.  Tr. 538.  Because Dr. Smyth found Allen's symptoms were credible and did not rule out Allen's potential for cognitive disorder, the Court concludes Dr. Smyth's opinion is not inconsistent with Allen's testimony and, therefore, does not undermine her credibility.

15  -  OPINION AND ORDER

The ALJ also found the reports by Disability Determination Services (D.D.S.)[2] physicians Martin Kehrli, M.D., and Sharon Eder, M.D., were inconsistent with Allen's testimony.  Tr. 23. The ALJ noted both physicians concluded Allen is capable of light-exertion work.  Tr. 23, 545, 596.  Dr. Eder indicated in her report that Allen's hepatitis C had significantly improved and that Allen's fatigue "cannot be attributed" to hepatitis or its related treatment.  Tr. 545.  Moreover, Dr. Eder found Allen's subjective complaints were "disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairment(s)."  Tr. 544.

Dr. Kehrli found Allen was capable of light-exertion work with no overhead reaching, which the ALJ incorporated in his evaluation of Allen's RFC.  Tr. 22, 595-601.  Dr. Kehrli notes significant medical improvement in Allen's hepatitis C and concluded Allen "has no real physical diagnosis that would result in fatigue that would require a 2 hour nap on a daily basis. Disability benefits should cease."  Tr. 601.

Nevertheless, Allen contends the ALJ's conclusion that her subjective testimony is not entirely credible is not supported by substantial evidence in the record.  The opinions of Drs. Eder

---

[2] D.D.S. is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

and Kehrli, however, are sufficient relevant evidence that "a reasonable mind might accept as adequate to support a conclusion" that Allen overstated the symptoms of her medical impairments. *See Robbins*, 466 F.3d at 882.

The ALJ also discredited Allen's subjective symptom testimony on the ground that Allen made inconsistent statements. Tr. 23-24.  Allen testified at the hearing that she had not had a driver's license for ten years since living in Nevada and that she stopped driving when her treatment for hepatitis C began. Tr. 1170-71.  Dr. Smyth, however, reported Allen stated during his examination that "she has a driver's license though does not drive often due to fatigue."  Tr. 536.  Allen does not provide any explanation for these inconsistent statements.  The ALJ also notes on June 13, 2006, Allen visited her treating physician, John C. Erkkila, M.D., and complained about knee pain after taking a cruise in the Carribean as a chaperone for disabled groups.  Tr. 993.  Dr. Erkkila notes in her report that Allen stated she was "mainly limited to the boat [and] basically sat around the pool with the 'slow group.'"  Tr. 993.  Allen reported to her physical therapist, Chris Guempel, however, that her knee was more swollen than usual because she was on her feet "quite a bit" while on the cruise.  Tr. 1055.  Again, Allen did not address this particular inconsistent statement.

On this record, therefore, the Court concludes the ALJ

provided legally sufficient reasons supported by substantial
evidence in the record for discrediting Allen's subjective
symptom testimony.

**B.    Angelia Baldwin.**

Allen contends the ALJ improperly rejected the testimony
of Allen's daughter, Angelia Baldwin.  Baldwin testified at
the hearing that she assists Allen with her medication because
Allen occasionally forgets to take it.  Tr. 1181-83.  Baldwin
testified she travels to see Allen approximately every other
week.  Tr. 1184-85.  Baldwin also testified her daughter helps
Allen almost every other day with basic daily activities such as
cooking, cleaning, and household finances.  Tr. 1185, 1194.

Baldwin testified Allen goes on one or two cruises a year to
assist disabled people.  Tr. 1188.  She attested Allen is mostly
sedentary during such trips and takes naps daily because she is
limited by knee pain and fatigue.  Tr. 1190.

Moreover, Baldwin noted Allen is often irritable and
experiences mood swings.  Tr. 1194-95, 1198.  She also testified
Allen struggles with urinary incontinence and requires a break to
use the lavatory almost every hour.  Tr. 1196-97.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511

18  -  OPINION AND ORDER

(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").  Although the ALJ
mentioned Baldwin's testimony, he did not provide any reason for
affording her testimony "less weight . . . than the objective
medical records."  Tr. 24.  Thus, the ALJ erred because he did
not provide reasons germane to Baldwin's testimony for giving it
little weight in his evaluation of Allen's physical and mental
limitations.  *See Lewis*, 236 F.3d at 511.

   **C.   RaNee Osborne.**

   Allen contends the ALJ erred by failing to consider the
written statement of Allen's daughter, RaNee Osborne.  Osborne
submitted a written statement on July 25, 2006, describing
Allen's physical and mental limitations.  Tr. 410-11.  Osborne
stated Allen lacks endurance and requires frequent naps; has
trouble remembering details and needs frequent reminders; and
needs assistance with many daily activities such as paying bills,
taking medications, and cooking.  Tr. 410-11.  Osborne stated
Allen cannot act as a chaperone on the cruises for the disabled
offered through Osborne's travel company without a family member
to accompany her because she cannot perform such duties as
passing out medications, monitoring expenses, or organizing daily
activities.  Tr. 410.  The ALJ did not address Osborne's

statement in his opinion.

The failure of the ALJ to evaluate lay testimony properly is not harmless error unless the reviewing court can confidently conclude "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Based on the testimony of lay witnesses Baldwin and Osborne if fully credited, Allen needs frequent naps, repeated reminders to perform basic tasks and to recall instructions, and frequent breaks due to urinary incontinence. The record, however, is not clear as to the work-related limitations from these impairments, particularly in light of the fact that the ALJ did not take testimony from a vocational expert (VE). Thus, the Court finds a "reasonable ALJ" could have found that Allen continues to be disabled on the basis of the testimony of Baldwin and the statements of Osborne. *See Stout*, 454 F.3d at 1056.

The Court, therefore, concludes the ALJ erred when he failed to adequately assess the lay-witness testimony and statements of Baldwin and Osborne, and that error was not harmless.

## II. Developing the Record.

Allen also contends the ALJ erred by failing to develop the record further as to Allen's cognitive impairments. In particular, Allen contends the ALJ did not request neuro-psychological testing despite her counsel's request on

November 6, 2006, to do so.  Tr. 1083.  Allen points out that
neurologist Cecilia Keller, M.D., and Dr. Smyth recommended
further neuropsychological testing to assess whether Allen has a
cognitive disorder affecting her memory.  Dr. Keller, one of
Allen's long-time treating physicians, indicated in a letter to
Allen's counsel that detailed neuropsychological testing was
necessary to determine whether Allen had a mild cognitive
impairment that would not affect her daily functioning or a
significant cognitive impairment that could be disabling.
Tr. 1084.  As noted, Dr. Smyth, one of Allen's examining
psychologists, made a "rule-out" diagnosis of cognitive disorder
NOS and also indicated further neuropsychological testing was
necessary to determine the existence or extent of a cognitive
impairment.  Tr. 538.

        The Commissioner bears the burden to develop the record even
when a claimant is represented by an attorney.  *Burch v.*
*Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Here the ALJ,
however, did not request further psychological testing.  Instead
the ALJ relied on a Psychiatric Review Technique (PRT) performed
by a D.D.S. psychologist[3] who diagnosed Allen with a moderate
cognitive disorder NOS, which was designated as nonsevere.
Tr. 550.  Medical consultant A. Lewy, Ph.D., reviewed the D.D.S.

---

        [3] The Court cannot determine the name of the psychologist
from the record.  The assessment is not signed or dated.

21  -  OPINION AND ORDER

PRT and concluded "it is doubtful that [Allen] has a cognitive disorder.  Overall the decision to find a nonsevere mental impairment is defensible." Tr. 534-65.  D.D.S. physician Bill Hennings, Ph.D., conducted another PRT on November 1, 2004, and made a "rule-out" diagnosis of cognitive disorder NOS.  Tr. 576-77.  The ALJ summarized these findings, but he did not provide reasons for concluding that these assessments were sufficient to support a finding that Allen's cognitive impairment is nonsevere nor did he develop the record by pursuing additional neuro-psychological testing as requested by Allen's physicians and counsel.  Tr. 20.

The Social Security Regulations distinguish between psychological tests such as the PRT and neuropsychological testing.  20 C.F.R. pt. 404, subpt. P, app. 1.  The regulations address the types of evidence that may be used to establish the existence and limiting effects of mental impairments under Listing 12.00.  *Id.*  Psychological tests must be administered by a licensed psychologist or other qualified specialist and generally focus on a claimant's ability to sustain attention and concentration and to perform tasks independently.  *Id.*  Neuro-psychological tests are required to be administered by specialists trained in neuroscience and may be used to assess the extent of compromised brain function as it affects a wide range of brain activity.  *Id.* (suggesting the use of neuropsychological

batteries such as the Luria-Nebraska or Halstead-Reitan tests).
Moreover, the Social Security Regulations provide screening tests
such as those used to determine gross level of functioning often
must be supplemented with other data.  *Id.*

On this record, the Court finds the medical evidence is not
sufficient to support a conclusion that Allen does not have a
cognitive impairment in light of the fact that, among other
things, several of the diagnoses are "rule-out," which suggests
more information is needed to make a determination as to the
extent of Allen's cognitive impairments.  Tr. 538, 550, 577.

The Court, therefore, concludes the ALJ erred when he failed
to meet his burden to develop the record as to the nature and
extent of Allen's cognitive impairment and the impact it may have
on her ability to work.

**III. Medical Improvement.**

Allen contends the ALJ improperly concluded Allen's medical
improvement led to an increased ability to perform work-related
activities.  In particular, Allen contends even though her
hepatitis C has medically improved, she is still impaired by
cognitive deficits and extreme fatigue that prevent her from
performing even sedentary work.  The Court, however, already has
determined there is insufficient evidence in the record to
establish the existence of any cognitive impairment or to
determine the extent of such an impairment on Allen's ability to

perform work-related activities.

Thus, the Court cannot determine on this record whether Allen's memory loss, cognitive function, or any related fatigue has improved since the Commissioner's initial disability determination on March 30, 2001.

## IV. Combination of Impairments.

Allen also contends the ALJ erred by failing to consider whether the combination of her severe and nonsevere impairments meet or equal a listed impairment. As noted, at Step Three for DIB (Step Two for SSI), the ALJ concluded Allen does not have an impairment or combination of impairments that meets or equals any listed impairment. Tr. 21. The ALJ, however, did not make any specific findings or provide reasons for his conclusion as to the combined effect of Allen's impairments.

Although the ALJ must consider whether a claimant's impairments singly or in combination meet or equal a listed impairment, "[a]n ALJ is not required to *discuss* the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination unless the claimant presents evidence intended to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)(emphasis added). Moreover, the ALJ's failure to specifically address the combined effects of a claimant's impairments and whether they equal a listing impairment is not reversible error when the claimant does

not identify any evidence to establish that her impairments in combination meet or equal a listing impairment. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

Here Allen does not offer any evidence to establish that a particular combination of her impairments meets or equals a specific listing, but merely contends generally that "[i[t is our position that . . . [t]he ALJ did not consider the combined effect of Ms. Allen's impairments and the signs and symptoms of her impairments upon her ability to engage in substantial and gainful activity."

The Court, therefore, concludes on this record that the ALJ did not err when he did not discuss the combined effects of Allen's impairments or compare them to any listed impairment.

**V.  Past Relevant Work.**

Allen also contends the ALJ erred when he found Allen could return to her past work as a "telemarketer."  Although Allen identified one of her previous jobs as telemarketing, her description of the job that she actually performed fits the description for data-entry clerk (203.584-054) in the Dictionary of Occupational Titles (DOT) rather than the definition of telephone solicitor (299.357-014).  Tr. 24, 92, 144-45.  As noted, at Step Seven the ALJ determined Allen could perform her past sedentary work as a telemarketer and, therefore, concluded she was no longer disabled and no longer entitled to benefits.

Tr. 24.  The Commissioner concedes the ALJ incorrectly relied on
the DOT description for telemarketer when he concluded Allen
could return to her past relevant work.  The Commissioner,
however, asserts the ALJ's error is harmless because Allen can
perform the data-entry job as she described it.

Allen maintains she is incapable of completing an eight-
hour workday "for any position" based on her cognitive deficits,
fatigue, and incontinence, but she does not identify any medical
evidence in the record to support her claim that her impairments
render her unable to work.  Allen, however, contends the Medical
Vocational Grids at 20 C.F.R. pt. 404, subpt. P, app. 2, Rule
201.06 establish she is disabled because she does not have any
skills that would transfer to a position as a data-entry clerk.
The grid at 201.06 requires a finding that Allen does not have
any transferrable skills, but Allen does not identify any
evidence in the record that establishes she does not have the
skills necessary to perform the job of data-entry clerk.  In
fact, Allen maintains she performed the job of data-entry clerk
for what appears to be a five-month period, Tr. 144, which
suggests she has skills that would enable her to perform the job
of data-entry clerk.

Dr. Keller indicates Allen might be unable to work if she
has a significant cognitive impairment, but, as noted, Dr. Keller
notes further testing is required to establish the existence and

to determine the severity of any cognitive impairment.  Tr. 1084.
In addition, there is not any testimony by a VE assessing the
impact of Allen's impairments on her ability to sustain
competitive employment as a data-entry clerk or any other
position.

Thus, on this record, the Court cannot conclude the ALJ's
error was harmless because, as noted, the record is not complete
as to the extent of Allen's impairments and their potential
impact on her ability to work.


**REMAND**

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).

The decision generally turns on the likely utility of
further proceedings.  *Id.* at 1179.  The court may "direct an
award of benefits where the record has been fully developed and
where further administrative proceedings would serve no useful
purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman*, 211 F.3d at 1178.  The
court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Here the ALJ erred by failing to develop the otherwise incomplete record with regard to Allen's cognitive impairments and the potential functional limitations stemming from any such impairments as requested by Allen's counsel and recommended by Drs. Keller and Smyth.  The ALJ also erred by failing to properly consider the testimony and statements of lay witnesses Baldwin and Osborne.  Moreover, the Commissioner conceded the ALJ erred when he found Allen could perform past relevant work as a "telemarketer" when, in fact, she had worked as a data-entry clerk.

The Court finds there are outstanding issues to be resolved before "a determination of disability can be made," including, but not limited to, supplementation of the record with neuropsychological tests of Allen's cognitive function, consideration of the work-related effects of the physical and mental limitations described in the statements and testimony of lay witnesses Baldwin and Osborne, determination as to whether

28  -  OPINION AND ORDER

claimant can return to her past relevant work or can perform other work, and a determination as to whether the testimony of a VE is required.  *See Harman*, 211 F.3d at 1178.  The Court, therefore, concludes on this record that a remand of this matter for further administrative proceedings consistent with this Opinion and Order is necessary.


### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

With respect to future proceedings in this matter after remand, § 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006

29  -  OPINION AND ORDER

(Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds Allen is disabled on remand and awards Allen past-due benefits and if, as a result, Allen intends to submit such application for attorneys' fees under § 406(b), Allen shall submit any such application within 60 days from the issuance of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 8th day of August, 2008.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge